UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

LEANDER CARTER,
    Plaintiff,

vs.    09-2247

BASHIR AMEJI, et al.,
    Defendants.

MEMORANDUM OPINION AND ORDER

    Before the court are the Defendant Mary Miller's motion for summary judgment [83], Plaintiff's response [100], and Defendant's reply [102].

    Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

    "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(c). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual

1

dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659. It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. Keri v. Barod of Trustees of Purdue University, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997).

## Background

Plaintiff is an inmate who, for the times at issue in this action, was in the custody of the Illinois Department of Corrections. Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 in which he alleged that the Defendant was deliberately indifferent to a serious medical need, in violation of the Eighth Amendment, by denying surgery for Plaintiff's hernia and restricting his ability to go to the prison yard. Defendant seeks summary judgment in her favor. She contends that she was not deliberately indifferent to Plaintiff's medical needs. Defendant asserts that she is also protected by the doctrine of qualified immunity.

## Undisputed Material Facts[1]

1. Plaintiff is an inmate in the custody of the Illinois Department of Corrections. During the majority of time relevant to his complaint, Plaintiff was housed at Danville Correctional Center. He was later transferred to Shawnee Correctional Center.
2. Defendant is employed as the Health Care Unit Administrator at Danville.

---

[1] Defendant's exhibits can be found attached to Defendant's summary judgment motion [83]. Plaintiff's exhibits can be found attached to Plaintiff's memorandum of law [101].

2

(Defendant's Exhibit A, Affidavit of Mary Miller, ¶ 1).
3. She has a background as a registered nurse, but did not treat Plaintiff or prescribe any course of treatment to him. (Def's Ex. A, ¶ 2).
4. In 2003, Plaintiff was diagnosed with another hernia, but he did not notice any problems until November 2007. (Def's Exhibit B, Deposition of Leander Carter, p. 11).
5. The hernia began to cause him trouble at that time by causing pain when he would laugh, cough, have a bowel movement, or stretch too much. (Def's Ex. B, p. 12).
6. Plaintiff complained of the hernia on November 27, 2007, while he was at Danville. (Def's Exhibit C, Medical Progress Note for Leander Carter, dated November 27-28, 2007).
7. He saw the doctor on the next day, and the doctor noted a left inguinal hernia, 2" diameter, not descending in testes. No sports no gym. Plan was for hernia belt truss to wear during the day and remove at bedtime. (Def's Ex. C).
8. On November 30, 2007, Plaintiff submitted a grievance requesting to be sent to a specialist for a determination on whether his hernia required immediate repair. (Complaint [1], Pl's Ex. 23, separately provided as Defendant's Exhibit D). He wrote that he had been informed that Mary Miller approves the funds for any operations on inmates, and she will not pay for him to have his hernia repaired unless certain circumstances are present. (Def's Ex. D).
9. Plaintiff submitted the grievance for emergency review, but the Chief Administrative Officer's office determined that an emergency was not substantiated. The grievance then went to Plaintiff's counselor, J. Smith, who referred the grievance to the Health Care Unit ("HCU") to Mary Miller. (Def's Ex. D).
10. The response provided to the grievance officer was not provided by Mary Miller, but instead by the Director of Nursing, Terry Fueyo. (Def's Ex. D). He stated that Plaintiff's belief that Mary Miller approves funds for operations or medical treatment is "erroneous." (Def's Ex. D). He described a process called "Collegial Review" which was in place for determination of special medical needs and services requiring outside consultation and/or treatment. The participants of Collegial Review are Terry Fueyo, Danville's Medical Director, Dr. Ameji, a consultation specialist and the regional medical director. (Def's Ex. D).
11. June 9, 2008, Plaintiff was seen by a registered nurse and the doctor. They noted an inguinal hernia, "was not descended into testicles." (Def's Exhibit E, Medical Progress Note for Leander Carter, dated June 9, 2008). The doctor prescribed a lower bunk, no sports, no gym, may walk. (Def's Exhibit E).
12. A medical permit which reflected the doctor's orders was written on June 9, 2008, and signed by the Defendant as "reviewed." (Complaint [1], Pl's Ex. 61).
13. The permit was changed on September 18, 2008, showing that Plaintiff could go to yard, but not gym or participate in heavy lifting or sports. This was also reviewed

       by Defendant.[2]  (Complaint [1], Pl's Ex. 61).  Plaintiff was not allowed to go to the yard though until October 5, 2008, when his Inmate Activity Card reflected that his yard privileges had been restored.  (Plaintiff's Exhs.16 and 62.)

14. Medical permits are issued by the treating physicians, and Defendant then signs off on the permits and forwards them to the appropriate department.  (Def's Ex. A, ¶ 8).
15. Plaintiff wrote to Defendant regarding his concerns over his hernia, and she responded by letter on December 11, 2007, and January 23, 2008, to assist him in addressing those concerns.  (Def's Ex. A, ¶ 8).
16. Plaintiff's hernia has not become strangulated at any point.  (Def's Ex. B, p. 12).
17. At no point has Plaintiff been unable to reduce the hernia or push it back in.  (Def's Ex. B, p. 12).
18. Plaintiff was transferred from Danville to Shawnee in December 2008.  He was scheduled to see a doctor upon arrival to Shawnee.  Plaintiff has not received surgery on his hernia as of November 17, 2010.  (Def's Ex. B, p. 13).
19. Plaintiff believes that Defendant "was part of the process which they called a collegial review where they determine whether or not that [he] will be recommended to see a specialist or receive any type of treatment for [his] hernia." (Def's Ex. B, p. 33).
20. Plaintiff also alleges that Defendant participated with Dr. Ameji to revoke his yard privileges.  (Def's Ex. B, p. 33).
21. Defendant does not participate in the collegial review process, she merely reviews the process to make sure that care is being provided pursuant to DOC's Administrative Directives and Institutional Directives regarding medical care.  If an inmate disagrees with Wexford's decision, he may submit an appeal of the decision to the State Medical Director–but Defendant does not have actual the authority to override a doctor or Wexford's decision.  (Def's Ex. A, ¶ 4).
22. Defendant does not have any decision-making authority as to whether an offender is referred for outside consultation or treatment; the doctor is the only one who can make the referral to Wexford Health Sources for this type of request.  (Def's Ex. A, ¶ 5). Defendant did not participate in any decision on whether to provide an outside consultation or surgery to Plaintiff.  (Def's Ex. A, ¶ 6).
23. Plaintiff could lift weights and indulge in various sports activities whether or not he went to yard or gym.[3] (*See* Pl's additional material facts in his memorandum of law.)

Immaterial Facts

---

[2]Plaintiff attempted to spin this fact into an additional material fact that inferred Miller authorized Dr. Ameji to revoke his gym privileges . . ., but in fact, the order was authorized by Dr. Ameji and signed "Reviewed" by Mary Miller.  *See* Court document 101-1 at 6, Pl's Exhibit 62; *see also* Court document 83-1 at 2, and Affidavit of Mary Miller ¶ 8.

[3]This fact cited by Plaintiff supports Defendant Miller's assertion that she was not deliberately indifferent.

The court further notes that plaintiff provided a list of additional material facts in the form of an affidavit. In fact numbers 1 and 2, Plaintiff identifies himself and states his facts are based on personal knowledge . . . Many of the plaintiff's facts regard conduct by Dr. Ameji. Those fact numbers 3, 4, 5, 6, 7, 8, 9, 11, 12, are immaterial as to whether Defendant Miller was deliberately indifferent to Plaintiff's serious medical needs. Fact number 10 regards equipment located at the gym in Danville Correctional Center. This fact is immaterial as to whether Defendant Miller was deliberately indifferent to Plaintiff's serious medical needs.

As to Plaintiff's additional material fact number 15, it is the same fact Defendant listed in her summary judgment motion as an undisputed material fact number 13. Defendant now asserts that Plaintiff's fact number 15 is immaterial as to whether Defendant Miller was deliberately indifferent to Plaintiff's serious medical needs.

> The permit was changed on September 18, 2008, showing that Plaintiff could go to yard, but not gym or participate in heavy lifting or sports. This was also reviewed by Defendant.[4] (Complaint [1], Pl's Ex. 61). Plaintiff was not allowed to go to the yard though until October 5, 2008, when his Inmate Activity Card reflected that his yard privileges had been restored. (Plaintiff's Exhs. 6 and 62.)

The court finds this fact is important for the court's understanding of the procedure regarding medical permits as they relate to yard and gym. Thus, this fact will remain as an undisputed material fact. Further, this fact is also immaterial as to the Defendant because Plaintiff admitted that he could lift weights and indulge in various sports activities whether or not he went to yard or gym.

As to Plaintiff's additional fact number 16, the fact that Plaintiff was not allowed to enter the yard at Danville Correctional Center during the period 2007-2008 is immaterial as to whether Defendant Miller was deliberately indifferent to Plaintiff's serious medical needs. As to Plaintiff's additional fact numbers 17, 18 and 19, the size of the cells is immaterial as to whether Defendant Miller was deliberately indifferent to Plaintiff's serious medical needs. As to fact number 20, the fact that the housing unit rules would not allow the plaintiff to run in the dayroom is immaterial as to whether Defendant Miller was deliberately indifferent to Plaintiff's serious medical needs.

---

[4]Plaintiff attempted to spin this fact into an additional material fact that inferred that Miller authorized Dr. Ameji to revoke his gym privileges ..., but in fact, the order was authorized by Dr. Ameji and signed "Reviewed" by Mary Miller. *(See* Court document 101-1 at 6, Pl's Exhibit 62; *see also* Court document 83-1 at 2, and Affidavit of Mary Miller ¶ 8.)

Conclusion

The court finds Defendant Miller did not exhibit deliberate indifference to Plaintiff's health through the denial of access to the yard or gym "[L]ack of exercise could rise to a constitutional violation where movement is denied and muscles are allowed to atrophy, and the health of the individual is threatened." *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) *(quoting French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986). However, lack of exercise does not amount to a medically threatening situation unless extreme and prolonged. *Harris*, 839 F.2d at 1236. After an examination on June 9, 2008, Dr. Ameji prohibited Plaintiff from playing sports or going to the gym, but allowed him to walk. On September 18, 2008, the order was changed to allow Plaintiff to go to yard, but he could still not play sports or lift weights in the gym. Defendant Miller did not make these decisions. She merely signed the medical permit reflecting the doctor's orders. Due to medical reasons, Plaintiff was limited in the types of exercise he could perform and he was not allowed to go to the yard for a little over three months, but he was not denied the opportunity to maintain his health. Plaintiff has not established that Miller denied him the ability to exercise, causing a medical issue.

Further, the court finds Defendant Miller was not deliberately indifferent to Plaintiff's medical needs. Establishing liability for deliberate indifference to serious medical needs requires satisfaction of a two-part test: (1) that the inmate suffers from an objectively serious medical need, and (2) that the prison official knew of and disregarded an excessive risk to the inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). First, an objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Second, for the subjective component of the test, the inmate must show that prison officials acted with a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834, *quoting Wilson v. Seiter*, 501 U.S. 294, 297 (1991). This means that the official must have known of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (2005). A prisoner's dissatisfaction or disagreement with a doctor's prescribed course of treatment does not necessarily give rise to a constitutional claim. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).

A hernia can be considered a serious medical need. *See Johnson v. Doughty*, 433 F.3d 1001, 1005 (7th Cir. 2006). In *Johnson*, an Illinois prisoner suffered from an inguinal hernia (a hernia in his groin area), that was reducible and was not strangulated. *Id*. at 1003-1004. The prisoner wanted surgery to repair his hernia, but the medical director of the facility determined that surgery was not required according to the symptoms the prisoner presented. *Id*. The doctors at the facility did not observe any worsening of the condition

6

that would necessitate surgery. *Id*. at 1004.  The court ultimately held that "treating [the prisoner's] hernia through non-surgical means did not constitute cruel and unusual punishment under the Eight Amendment." *Id*.  The prisoner sued the facility doctors, other prison officials, and the health care unit administrator. *Id*.  The health care unit administrator was a registered nurse who met with the prisoner to discuss the prisoner's complaints, he deferred to the doctors and told the prisoner to follow the doctor's instructions. *Id*. at 1005.  After being advised by the prisoner that his condition had worsened since he last saw the doctor, the health care unit administrator scheduled an appointment for the prisoner to see the doctor for reassessment. *Id*. at 1015.  The court affirmed the district court's finding that the administrator was not deliberately indifferent where he took the prisoner's condition seriously, investigated the situation, referred the prisoner to the doctor for reassessment, and reasonably relied on the doctors' professional opinions. *Id*. *Johnson* is almost indistinguishable from the Plaintiff's case here.  Similar to the prisoner in *Johnson*, Plaintiff suffers from an inguinal hernia, that is reducible and is not strangulated.  The hernia has not worsened and, as of November 17, 2010, has been reducible without becoming strangulated.  Also, Plaintiff wanted surgery to repair his hernia, but he was advised that surgery was not required.  As in *Johnson*, failing to provide Plaintiff reparative surgery for his hernia does not violate the Eighth Amendment's proscription of cruel and unusual punishment.

Furthermore, Defendant Miller was not deliberately indifferent to Plaintiff's medical needs.  Plaintiff alleges that he needed outside treatment and that Defendant denied him outside treatment due to cost issues, but Defendant had no authority to refer Plaintiff for outside treatment.  His lawsuit is based on the mistaken belief that Defendant Miller is part of the process in referring prisoners for outside consultation or treatment.  Although her authority is limited, she acted within her role by taking his concerns seriously and addressing them when they were presented to her. Although Plaintiff disagrees with the treatment he received at Danville, he was not treated with deliberate indifference by the Defendant.

Government officials performing discretionary functions are generally shielded from liability or civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982).  This qualified immunity protects correctional officers from liability as well as from the burden of standing trial. *See Borello v. Allison*, 446 F.3d 742, 746 (7th Cir. 2006).  The court must decide whether a plaintiff has alleged facts that if proved would show a violation of a constitutional right. *Id.* at 201.  The court also determines whether that right was clearly established at the time of the violation. *Id.*  The court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. __, 129 S. Ct. 808, 818 (2009).  As described in

detail above, *Johnson v. Doughty* is directly applicable to the case at hand. There, the court held that there was no Eighth Amendment violation, and it specifically addressed the role of the health care unit administrator in referring prisoners for outside treatment. Based on that case, a similarly situated administrator would believe that deferring to the appropriate professionals and acting appropriately within her role would be sufficient to avoid facing liability for an Eighth Amendment claim. Defendant is entitled to qualified immunity here, and summary judgment is granted in her favor.

It is therefore ordered:

1. The Defendant Mary Miller's motion for summary judgment is granted [83]. The clerk of the court is directed to enter judgment in favor of the defendant and against the plaintiff <u>at the close of this case</u>.
2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court <u>within 30 days of the entry of judgment</u>. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).

Enter this   26th   day of August 2011.

/s/ Michael P. McCuskey
_____
Michael P. McCuskey
Chief United States District Judge