UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

LEANDER CARTER,

      Plaintiff,

vs.                                                                 09-2247

BASHIR AMEJI, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

      Before the court is the Defendants, John Myers and Keith Anglin's unopposed motion for summary judgment [85]. Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### Standard

      Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

      "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). A party opposing summary judgment bears the burden to respond, not

simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(c).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).  Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001).  Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc.*, 176 F.3d 390, 390 (7th Cir. 1999).  Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).  "But the inferences and opinions must be grounded in observation or other first-hand personal experience.  They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.  It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment.  Keri v. Barod of Trustees of Purdue University, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997).

Background

During the period of time relevant for purposes of this motion, Plaintiff was housed at Danville Correctional Center. Plaintiff filed a complaint pursuant to *42 U.S.C. § 1983* in which he alleged that these Defendants retaliated against him for filing a grievance, in violation of his First Amendment rights.  Defendants seek summary judgment in their favor.  They assert they did not act in retaliation.  Further, Defendants assert that Plaintiff cannot meet his burden because he was not engaged in protected First Amendment activity and he cannot establish that the Defendants acted with a retaliatory motive.  Defendants assert they are also protected by the doctrine of qualified immunity.

Undisputed Material Facts[1]

1. Defendant Myers is an Internal Affairs Investigator at Danville. (Court doc. 1, ¶ 12; court doc. 41, ¶ 12).
2. Defendant Anglin is the Chief Administrative Officer ("CAO") and Warden of Danville. (Court doc. 1, ¶ 11; court doc. 41, ¶ 11).
3. On October 3, 2008, Plaintiff wrote a grievance alleging the following: "On September 18, 2008, after I revoked my conse[n]t during medical examination, I was assaulted by Physician Bashi Ameji in an examination room located in Danville Healthcare Unit." (Court doc. 1, Exhibit 44; separately attached as Defendants' Exhibit A, Grievance dated October 3, 2008, and related responses).
4. The grievance was denied by the Grievance Officer on December 12, 2008, and one of the CAO's designees concurred with the Grievance Officer's determination on the same date. (Defs' Exhibit A).
5. In the interim, Defendant Anglin asked Defendant Myers to conduct an interview with Plaintiff regarding his allegations of assault against Dr. Ameji. (Defs' Exhibit B, Affidavit of John Myers, ¶ 2). The interview was held on November 20, 2008. (Court doc. 1, Exhibit 59; separately provided as Defs' Exhibit C, Offender Disciplinary report dated November 20, 2008).
6. Defendant Myers noted that Plaintiff threatened to sue Dr. Ameji and stated that "he (Ameji) might win in court but he (Ameji) will be walked out of here in handcuffs." (Defs' Exhibit B, ¶ 3; Defs' Exhibit C).
7. Following the interview, Defendant Myers spoke with Defendant Anglin about the meeting, and relayed Plaintiff's statements to Defendant Anglin. He was instructed to write a disciplinary report based on those statements and he wrote one for a violation of Rule 206: Intimidation or threats. (Defs' Exhibit B, ¶¶ 4-5).
8. At the time of the interview, Defendant Myers was not aware of previous grievances Plaintiff wrote regarding Dr. Ameji. (Defs' Exhibit B, ¶ 7).
9. Plaintiff was escorted to segregation, and the disciplinary report was referred to the Adjustment Committee as a major infraction by the reviewing officer Major Macieiski. (Defs' Exhibit C).
10. On November 24, 2008, the Adjustment Committee conducted a hearing, where Plaintiff disputed the charge but admitted that he would go to court and be a litigator. (Court doc. 1, Exhibit 59; separately provided as Defs' Exhibit D, Adjustment Committee Final Summary Report).
11. The Adjustment Committee found him guilty and recommended the following disciplinary action: (1) 1 month C grade; (2) 1 month segregation; (3) transfer; and (4) 1 month commissary restriction. (Defs' Exhibit D).

---

[1] Exhibits can be found attached to Defendants' motion for summary judgment [85].

12. The CAO's designee "JAW" approved the recommended disciplinary action. (Defs' Exhibit D).
13. The CAO may delegate his responsibilities to another person or persons to perform duties associated with the administration of discipline, Ill. Admin. Code tit, 20, § 504.15(a), and those duties associated with the grievance process, Ill. Admin. Code tit. 20, § 504.805(a).
14. The Adjustment Committee is charged with determining whether the inmate committed the offenses charged. Ill. Admin. Code tit 20, § 504.80(k).
15. Specifically, the Adjustment Committee may find that the offender did not commit the offense, that further investigation is necessary, or that the offender did commit the offense or a lesser offense for which the elements were included in the original charge. Ill. Admin. Code tit 20, § 504.80(k)(1)-(4).
16. If the Adjustment Committee finds the inmate guilty, it may recommend disciplinary action. Ill. Admin. Code tit 20, § 504.80(k)(4). It may also recommend a transfer pursuant to a finding of guilt of any disciplinary infraction. Ill. Admin. Code tit 20, § 503.140.

## Conclusion

Plaintiff was not engaged in protected First Amendment activity. Prisoners have a constitutional right to the courts that includes the right to pursue administrative remedies. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). "To prevail on a First Amendment retaliation claim, [a plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future," *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); and (3) the First Amendment activity was the reason or but-for cause that a defendant decided to act, *Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343, 2350 (2009); *Waters v. City of Chicago*, 580 F.3d 575, 584 (7th Cir. 2009).

The First Amendment is not absolute and prisons can lawfully limit prisoners' First Amendment activity in ways that are more restrictive than the outside world. A prison regulation that impinges on inmates' constitutional rights is valid if reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Legitimate penological objectives include crime deterrence, prisoner rehabilitation, and internal prison security. *Bridges*, 557 F.3d at 548; *Pell v. Procunier*, 417 U.S. 817, 822-23 (1974). Security concerns allow prison authorities to proscribe language that is foul, vulgar, abusive, threatening, or inappropriate toward other prisoners or employees. *Ustrak v. Fairman*, 781 F.2d 573, 579 (7th Cir. 1986) (There are "few things more inimical to prison discipline than allowing prisoners to abuse guards and each other. The level of violence in American prisons makes it imperative that the authorities take effective steps to prevent provocation."). Similarly, prisons have a legitimate interest in

preventing manipulation and harassment of its employees. *Hale v. Scott*, 252 F.Supp.2d 728, at 734 (C.D. Ill. 2003), *aff'd*, 371 F.3d 917 (7th Cir. 2004) (inmate could be disciplined for insolent statements contained in a grievance when he admitted they were mere rumors). Disciplinary infraction 206 is defined as: "Expressing by words, actions, or other behavior an intent to injure any person or property that creates the reasonable belief that physical, monetary, or economic harm to that person or to another will result." Ill. Admin. Code tit. 20, § 504, appendix A. It legitimately limits the speech that prisoners may use in the facility.

Defendants were entitled to write a disciplinary report for any threats Plaintiff made against staff, and they chose to do so. Plaintiff has not established that he was engaged in protected First Amendment activity. Nevertheless, Plaintiff alleges that Defendant Myers "fabricated a false disciplinary report." (Court doc. 1, ¶ 119). He does not describe how the disciplinary report is false, and he admitted to the Adjustment Committee that he threatened to take Dr. Ameji to court and be a litigator. But, even taking Plaintiff's story as true, he has not established the first element of retaliation. According to Plaintiff, he wrote a grievance making allegations against Dr. Ameji, which was investigated by internal affairs. While much of the following is disputed by the Defendants, Plaintiff wrote of the investigative interview that: (1) Defendant Myers "sought to question Plaintiff about the grievance filed against Dr. Ameji in reference to his assault on Plaintiff during a medical examination at the Danville Correctional Center Healthcare Unit" (Court doc. 1, ¶ 113); (2) "Plaintiff told John T. Myers that, 'the grievance I wrote speaks for itself and I am not in the habit of repeating myself'" (Court doc. 1, ¶ 114); and (3) Defendant Myers then told him that "the Warden told me to question you and inform you that he will not have you falsely accusing his staff" (Court doc. 1, ¶ 115). If this exchange is the basis for Plaintiff's retaliation claim, it must fail. Defendants were working in their appropriate roles when they began the investigation of Plaintiff's serious allegations. If Plaintiff failed to substantiate his allegations against Dr. Ameji by cooperating, Defendants could believe that the allegations were false and his grievance and statements were made in an effort to threaten or harass Dr. Ameji. Prison officials could discipline Plaintiff for his speech for the same reasons discussed in *Ustrak* and *Hale*–his speech was not protected.

Further, Plaintiff has not established that Defendants acted with a retaliatory motive. Plaintiff has not established that First Amendment activity was the but-for reason the Defendants acted. "As in any § 1983 action, the plaintiff must establish the state of mind required to prove the underlying violation. . . . In a First Amendment retaliation claim, as alleged here, the plaintiff must prove that his speech was the reason that the [defendant] decided to act." *Waters*, 580 F.3d at 584 (internal quotations omitted). Plaintiff alleges that: "There was a concerted effort by John T. Myers and CAO Keith O. Anglin to engineer Plaintiff's placement in segregation and transfer out of Danville

Correctional Center to a different penitentiary as retaliation for Plaintiff filing a grievance against Bashirahmed M. Ameji for assault." (Court doc. 1, ¶ 126). Yet, all of the facts establish that the Defendants acted appropriately in response to Plaintiff's grievance when they set up an interview in an effort to investigate his claims. The grievance itself still followed the proper channels and was examined by the grievance officer. Defendant Myers was not even aware of Plaintiff's grievance when he began questioning Plaintiff. Plaintiff has not established that the Defendants were motivated to retaliate against him for the grievance he filed. Plaintiff has not provided any evidence of his conspiracy claims. He only provides the bare assertion that the Defendants worked together to retaliate against him. While it is true that Defendant Anglin instructed Defendant Myers to conduct the interview, and then later to write the disciplinary report, Plaintiff cannot show that the Defendants were engaged in some sort of combined effort to punish him merely for writing a grievance against Dr. Ameji. Additionally, the discipline that resulted from the disciplinary report came through the recommendation of several other actors: the reviewing officer who submitted the report to the Adjustment Committee, the Adjustment Committee officers who conducted the hearing, found guilt, and recommended the transfer, and the Warden's designee who approved the recommendation. Several people were involved in the disciplinary process and considered the disciplinary report to be appropriate–those individuals found Plaintiff guilty of violating the disciplinary code and disciplined him accordingly–and there is no evidence that they were all involved in a conspiracy to retaliate against the Plaintiff. Plaintiff cannot establish that the Defendants acted with a retaliatory motive or that they conspired to place Plaintiff in segregation or transfer him to a different facility. Defendants are entitled to summary judgment on Plaintiff's claim of retaliation.

Further, Defendants are entitled to qualified immunity. Government officials performing discretionary functions are generally shielded from liability or civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). This qualified immunity protects correctional officers from liability as well as from the burden of standing trial. *See Borello v. Allison*, 446 F.3d 742, 746 (7th Cir. 2006). The court must decide whether a plaintiff has alleged facts that if proved would show a violation of a constitutional right. *Id.* at 201. The court also determines whether that right was clearly established at the time of the violation. *Id.* The court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. __, 129 S. Ct. 808, 818 (2009). "If conduct is based on an objectively reasonable decision, qualified immunity does apply, even if that conduct is later determined to be wrong." *Hale v. Scott*, 371 F.3d 917 (7th Cir.(Ill.)  In *Hale*, the court found that the defendants would be entitled to qualified immunity even if the court had found a constitutional violation. *Id*. at 735. At the time of its decision, the court could

find no binding precedent addressing discipline for false or insolent statements in grievances. Presently, the law involving discipline for prisoner's institutional speech is not much more developed, and *Hale* appears to be the case most directly applicable to the case at hand. *Id*. A reasonable officer could have believed that he was acting appropriately in investigating serious allegations made by an inmate against staff. Here, as there, a reasonable officer could have objectively believed that his conduct in writing a disciplinary report for speech he felt was inappropriate, false, or threatening did not offend the constitution. Defendants are entitled to summary judgment on Plaintiff's claim of retaliation.

It is therefore ordered:

1. The Defendants, John Myers and Keith Anglin's motion for summary judgment is granted [85]. The clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff <u>at the close of this case</u>.

2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court <u>within 30 days of the entry of judgment</u>. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).

Enter this   26th  day of August 2011.

/s/ Michael P. McCuskey
_____
Michael P. McCuskey
Chief United States District Judge